**Samuel TAYLOR, Appellant,**

v.

**STATE of Indiana, Appellee.**

No. 45S00–9003–CR–230.

Supreme Court of Indiana.

Oct. 25, 1991.

James F. Stanton, Appellate Div., Crown Point, for appellant.

Linley E. Pearson, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

GIVAN, Justice.

A jury trial resulted in the conviction of appellant of Murder, for which he received a sentence of fifty-five (55) years.

The facts are: Appellant and Rhonda Calloway were boyfriend and girlfriend. Some time prior to August 6, 1988 they came to a disagreement as to the possession of certain food stamps. The disagreement escalated until in the early morning hours of August 6, 1988 gunshots were heard by the occupants of the home owned by Lester Yanders where Calloway lived. When Calloway looked through the window, she saw appellant standing across the street shooting toward the house. However, he left and no one was injured in that shooting.

At approximately 3:00 p.m., on the same day, Lester Yanders was seated in a chair in his front yard when appellant again began shooting at the house from across the street. The third shot fired struck Yanders and inflicted a mortal wound.

Appellant claims there is insufficient evidence to convict him of murder. He points out that the evidence shows that Yanders was seated in a chair with his left side toward the direction from which the shots were fired. He argues that at the time Yanders was struck he was either still seated in the chair or was just beginning to rise therefrom. He further points out that the pathologist's report stated that Yanders was struck in the right side and the bullet travelled from right to left through his body. Appellant therefore draws the conclusion that the facts demonstrate that it was impossible for him to have fired the fatal shot. He hypothesizes that the fatal shot, by necessity, must have come from the direction of the house.

We find that appellant has taken some license with the facts in this case. Although it is true that Yanders was seated

in the chair with his left side toward the direction of the shooting, it was the third shot which struck Yanders, and when the first shot was fired, Mack Mosley, who was in the yard with his grandfather at the time of the shooting, fell to the ground then started rolling toward the house in an attempt to seek cover. Calloway, who was watching appellant from the house, had her attention on appellant.

Under the facts presented at trial, the jury was warranted in making the deduction that after hearing the first shots, Yanders began to move from his seated position away from the direction from which the shots were coming, and that his movements exposed his right side to the line of fire. There is no evidence in this record that any other shooting occurred during the incident. Appellant was positively identified by several people who knew him to be the only one who fired a shot.

Appellant claims that although three bullets were recovered—two from inside the house and one from the body of Yanders—no ballistics tests were performed. In fact, the bullet removed by the pathologists from the decedent's body apparently was lost and not produced at all. Although ballistics tests are quite often used to demonstrate the source of a fatal bullet, the elements of the crime do not require the State to present such evidence. *Allen v. State* (1986), Ind., 496 N.E.2d 53. In the case at bar, there is no question that the evidence supports the conclusion that appellant fired the fatal shot. It cannot be said that the ballistics tests were necessary to establish this fact.

Appellant also contends the State's evidence was insufficient because there was no police testimony presented. In a situation such as in the case at bar where there are several eye witnesses who knew the appellant well, it is obvious that the State's entire case was based upon their testimony. There is no facet of this case which indicates the necessity for police testimony. The question before this Court is whether there was sufficient evidence to support the jury verdict beyond a reasonable doubt. We find that the evidence in fact does support the jury verdict beyond a reasonable doubt.

The trial court is affirmed.

SHEPARD, C.J., DeBRULER, DICKSON and KRAHULIK, JJ., concur.